**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesus Emmanuel Jara, | No. CV-17-01090-PHX-DWL |
| Petitioner, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

On April 12, 2017, Petitioner Jesus Emmanuel Jara filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) On July 17, 2018, Magistrate Judge Burns issued a Report and Recommendation ("R&R") concluding the petition should be denied and dismissed with prejudice. (Doc. 15.) Jara timely filed objections to the R&R (Doc. 19),[1] to which Respondents have not filed a response, and Jara subsequently filed a request for judicial notice (Doc. 20).

**I.    Background**

    **A.    State Proceedings**

In November 2005, Jara was charged in Arizona state court with one count of armed robbery and two counts of felony murder. (Doc. 13-1 at 6.) The charges arose from an incident in November 2005 in which Jara—who was 15 years old at the time—and two

---

[1] On November 6, 2018, Jara filed a document entitled "Objection and Notice to the Court." (Doc. 17.) In it, Jara asserted that he'd never received a full copy of the R&R or a full copy of Respondents' answer to the petition. (*Id.*) Accordingly, on January 31, 2019, the Court provided complete copies of these documents to Jara and afforded him an additional 21 days to respond to the R&R. (Doc. 18.)

friends robbed a sandwich shop. (*Id.* at 7.) Jara carried a loaded assault rifle into the shop, handed it to his friend, and stood guard by the door. When one of the shop's employees recognized Jara's friend, the friend used the rifle to fatally shoot the employees. (*Id.*) Jara and the friend left the shop with approximately $60 and the victims' cell phones, got into the friend's car (where a third friend was waiting), and drove away. (*Id.*)

Following a jury trial, Jara was convicted on all counts and sentenced to "10.5 years' imprisonment for the armed robbery conviction and to life imprisonment with the possibility of parole after twenty-five years for each of the first-degree murder convictions." (*Id.*) However, at the time of Jara's sentencing, parole was not available to anyone convicted after January 1, 1994. Arizona Revised Statutes ("A.R.S.") § 41-1604.09 (1993).

In January 2009, the Arizona Court of Appeals affirmed Jara's conviction and sentence. (Doc. 13-1 at 8.)

In February 2009, Jara filed his first notice of post-conviction relief ("PCR"). (*Id.* at 19-23.) In June 2009, his appointed counsel filed a notice that she was unable to identify any tenable issues. (*Id.* at 25.) Jara thereafter failed to file a *pro se* PCR petition. (*Id.* at 28.) As a result, on May 5, 2010, the trial court dismissed the proceedings. (*Id.*)

On June 25, 2012, the U.S. Supreme Court decided *Miller v. Alabama*, 567 U.S. 460 (2012), holding that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Id.* at 465.

On June 25, 2013, Jara filed a successive PCR notice. (Doc. 13-1 at 30-31.) In it, he checked boxes indicating that "[t]here has been a significant change in the law that would probably overturn the conviction or sentence" and that "[f]acts exist which establish by clear and convincing evidence that the defendant is actually innocent." (*Id.* at 31.) In the portion of the notice requiring him to state all of the facts underlying his claim and his reasons for not raising it earlier, Jara wrote: "The U.S. Supreme Court has ruled that mandatory life without parole sentences for juveniles are unconstitutional (*Miller v.*

*Alabama*, 132 S.Ct. 2455 (2012))." (*Id.*)

On July 2, 2013, the trial court denied relief, stating (1) "Defendant did not receive the sentence that he claims is illegal under *Miller*"—that is, "life imprisonment without parole"—and (2) "*Miller* does not place a categorical ban on juvenile life without parole." (Doc. 13-1 at 34.)

On July 18, 2013, Jara filed a "Motion for Rehearing and/or Reconsideration for Pro Se Notice for Post-Conviction Relief and Request to Have Counsel Appointed." (*Id.* at 36.) In this motion, Jara did not identify any specific reasons why the trial court's decision was wrong or attempt to assert any new arguments not contained in his PCR notice—he simply asked that "counsel be appointed to articulate in a more profound way, a legal analysis and legal argument explaining how in fact [*Miller*] in its totality is a significant change in the law that applies to his case." (*Id.*)

On May 9, 2014, after consolidation with other cases, further briefing, and oral argument, the trial court issued an eight-page order amending its ruling. (Doc. 13-1 at 43-50.) The court began by disavowing the conclusions reached in its earlier order. (*Id.* at 44-49.) Among other things, the court noted that, given the statutory amendments made to Arizona's sentencing laws in 1994 abolishing parole,[2] "from 1994 to the present date, the only mechanism for release under a life sentence in Arizona has been through clemency or commutation. There is a vast difference between clemency/commutation and parole and the distinction is central to the issue of whether there is a 'meaningful opportunity' for release as contemplated by *Miller*." (*Id*. at 48.) For these reasons, the court concluded that Jara did not, in fact, have a meaningful opportunity for release as was "mandated under *Miller* in cases in which the possibility for release is ordered for a juvenile offender." (*Id.* at 49.) The court also concluded that *Miller* applies retroactively and presents a significant change in the law. (*Id.* at 47-48.)

Those two conclusions left the trial court with one final issue: whether Jara's claim

---

[2] The court noted in another portion of its order that "[p]arole was abolished in Arizona in 1994 with amendments to A.R.S. § 41-1604.09." (Doc. 13-1 at 49 n.11.)

- 3 -

under *Miller* was "ripe for determination." (*Id.* at 49.) But the court did not reach this issue because "an intervening event" had occurred 17 days earlier—on April 22, 2014, Arizona's governor signed into law H.B. 2593, which, once it became effective a few months later on July 24, 2014, would "reinstate parole for juvenile offenders sentenced to life with the possibility of release, including those sentenced before the law becomes effective." (*Id.*) The court held that H.B. 2593 "resolves the residual issues for those sentenced to life imprisonment on or after January 1, 1994 that could have called into question whether [Jara's] sentence violated the letter and spirit of *Miller*." (*Id.* at 50.) The court therefore denied relief under Rule 32 with the condition that the Arizona Department of Corrections set a specific date for Jara's parole eligibility once H.B. 2593 (codified at A.R.S. § 13-716) became an effective law. (*Id.*)

On June 7, 2016, the Arizona Court of Appeals affirmed the denial of Jara's PCR petition. (Doc. 13-1 at 3-4.) In his petition for review, as summarized by the Court of Appeals,[3] Jara contended "the trial court erred by denying him the opportunity to raise issues regarding the application of H.B. 2593," including "[1] that H.B. 2593 was not intended to apply retroactively, [2] its retroactive application violates separation of powers and ex post facto principles, and [3] parole availability under the statutes does not satisfy *Miller*." (*Id.* at 4.) The Court of Appeals held that the first two issues were foreclosed by *State v. Vera*, 334 P.3d 754 (Ariz. Ct. App. 2014), and the third issue was foreclosed by *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). (*Id.*)

On January 10, 2017, the Arizona Supreme Court summarily denied Jara's petition for review. (Doc. 13-1 at 52.)

### B. Federal Habeas Proceedings

On April 12, 2017, Jara filed his habeas petition. (Doc. 1.) It raises the following three claims: (1) his sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment; (2) the state violated the *ex post facto* doctrine by denying him relief based upon a newly-enacted statute, A.R.S. § 13-716; and (3) the state violated his due

---

[3] Jara's petition for review does not appear to be included in this Court's record.

- 4 -

process rights by denying him the right to an evidentiary hearing to challenge the application of A.R.S. § 13-716. (Doc. 15 at 4-5.)

The R&R was issued in July 2018. (Doc. 15.) First, the R&R concludes the petition should be dismissed in its entirety because it wasn't filed within AEDPA's one-year statute of limitations. (*Id.* at 5-7.) Specifically, the R&R explains that the petition needed to be filed within one year of when *Miller* was decided, yet Jara waited 364 days after *Miller* to file his successive PCR petition in state court and then waited another three months after the date on which the state proceedings ended (*i.e.,* January 10, 2017, when the Arizona Supreme Court denied review) to file the petition with this Court. (*Id.*) Thus, the R&R concludes that "Jara's habeas petition is . . . untimely by 91 days." (*Id.* at 6.)

Alternatively, the R&R concludes that all three of Jara's claims fail on the merits. As for the first claim (Eighth Amendment), the R&R explains that the Supreme Court held, in *Montgomery*, that states may remedy *Miller* violations by allowing juvenile homicide offenders to be considered for parole, and the R&R concludes that Arizona supplied such a remedy by enacting H.B. 2593. (Doc. 15 at 8.) As for the second claim (*ex post facto*), the R&R concludes it fails because H.B. 2593 "did not undermine Jara's conviction, and did not increase Jara's punishment." (*Id.* at 8-10.) As for the third claim (denial of evidentiary hearing), the R&R concludes it fails because Jara never attempted to "identify any facts that he would have presented in an evidentiary hearing." (*Id.* at 10.)

**II.      Standard Of Review**

A party may file specific, written objections to an R&R within fourteen days of being served with a copy of it. Rules Governing Section 2254 Cases 8(b) ("Section 2254 Rules"); *see also* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). The Court must undertake a *de novo* review of those portions of the R&R to which specific objections are made. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1221 (9th Cir. 2003) ("[T]he

district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise."). The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Section 2254 Rules 8(b); *see also* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).

### III. The Parties' Arguments

Jara raises three objections to the R&R. (Doc. 19.) First, Jara contends the R&R was issued prematurely because he was never afforded an opportunity to file a reply to Respondents' answer to his petition. (*Id.* at 2.) Second, Jara devotes the bulk of his brief to a discussion of the merits of his *Miller* claim, arguing that his sentence was effectively a life sentence without the possibility of parole at the time it was imposed (because executive clemency didn't provide a meaningful chance for release) and that the enactment of H.B. 2593 didn't remedy this issue. (*Id.* at 2-10.) Third, Jara argues that *Montgomery* recognized that *Miller* creates a retroactive right to a new sentencing. (*Id.* at 10.) Jara also requests appointed counsel. (*Id.* at 10-11.)

### IV. Analysis

As noted, the R&R recommended that the petition be rejected because (1) it was filed outside AEDPA's one-year statute of limitations, and is thus untimely, and (2) alternatively, each of Jara's claims fails on the merits.

#### A. Statute of Limitations

Jara's objections to the R&R (Doc. 19) do not address, let alone demonstrate the inaccuracy of, the R&R's conclusion that his petition must be dismissed because it was filed outside AEDPA's one-year statute of limitations.

This omission means that Jara is not entitled to relief. The Supreme Court has explained that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Arn,* 474 U.S. at 149-50. *See also Reyna-Tapia*, 328 F.3d at 1121.

It should be noted that Jara does raise a general objection to the R&R—he contends

it was issued prematurely because he didn't initially receive a copy of Respondent's answer to the petition and, thus, didn't have an opportunity to file a reply before the R&R was issued. (Doc. 19 at 2.) But this argument overlooks that, when Jara first asserted that he hadn't received a copy of the answer (Doc. 17 at 3), the Court responded by providing him with a copy of that document and affording him additional time to file objections to the R&R (Doc. 18). Despite this additional time, Jara still has not attempted to identify any reasons why equitable tolling might apply in this case (and the Court has not discerned, through its own independent review of the record, any basis for such a tolling claim). Accordingly, the Court will adopt the R&R's undisputed statute-of-limitations analysis and dismiss the petition on that basis.

**B. Merits**

Although Jara's habeas petition must be dismissed for statute-of-limitations reasons, the Court will proceed, in an abundance of caution, to address his merits-based objections to the R&R.

As noted, the trial court concluded that Jara had been sentenced to life imprisonment without a meaningful opportunity of release, in violation of the Eighth Amendment as interpreted in *Miller*, but further concluded that H.B. 2593 would remedy the constitutional violation by creating a meaningful opportunity of release. (Doc. 13-1 at 49-50.) The Arizona Court of Appeals, which issued the last reasoned decision on Jara's claims, held that that H.B. 2593 remedied the constitutional violation under *Miller* and did not violate *ex post facto* principles, relying on *Montgomery* and *State v. Vera*, 334 P.3d 754 (Ariz. Ct. App. 2014). (Doc. 13-1 at 4.) And the R&R concluded the Arizona Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts. (Doc. 15 at 7-10, citing 28 U.S.C. § 2254(d)).

In his first merits-based objection to the R&R, Jara begins by providing a summary of various legal decisions and statutory changes since 1993. (Doc. 19 at 2-7.) Following this discussion, Jara asserts that "Arizona has no mechanism for a parole board hearing"

and that "Arizona's enactment of A.R.S. § 13-716 (necessary to conform Arizona law with the dictates of *Miller*) failed to provide an adequate remedy for Petitioner's *Miller* and *Montgomery* claims since neither 13-716 nor HB 2593 provides parole eligibility to Petitioner Jara." (*Id.* at 8-9.)

These arguments are unavailing because they are not the same arguments Jara raised in his habeas petition. In his habeas petition, Jara's theory was limited to the argument that H.B. 2593 doesn't constitute a valid solution to the infirmity of his sentence under *Miller* because it was enacted after he was sentenced and cannot be applied retroactively. (Doc. 1 at 12-18.) Yet in his objections, Jara seeks to argue that, even if it might be possible in theory to cure a *Miller* violation retroactively, Arizona's attempt to do so was flawed in application because Arizona doesn't actually provide juveniles who were sentenced to life imprisonment with a "mechanism for a parole board hearing."

This change in theory is impermissible. The rule in the Ninth Circuit is that a litigant cannot raise a new theory for the first time in its objections to a report and recommendation issued by a magistrate judge. *Greenhow v. Sec. of Health & Human Services*, 863 F.2d 633, 638 (9th Cir. 1988) ("The district court's refusal to consider Greenhow's belated claim was entirely appropriate. . . . [A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act. We do not believe that the Magistrates Act was intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court.").[4] *Accord Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) ("The First, Fifth, Ninth, and Tenth Circuits . . . [have concluded] that requiring the district court to consider new arguments raised in the objections effectively would eliminate efficiencies gained through the Magistrates Act and would unfairly benefit litigants who could change their tactics after issuance of the magistrate judge's report and recommendation.").

---

[4] *Greenhow* was overruled on other grounds by *United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir. 1992) (en banc).

Jara's remaining merits-based objection to the R&R is that it "fails to take into account the *Montgomery* holding on retroactivity, and that *Miller* requires[] that '*new sentencing options be available*.'"[5] (Doc. 19 at 10.) This argument is easily rejected. In *Montgomery*, the Supreme Court held that "*Miller* announced a substantive rule of constitutional law" and is therefore retroactive. 136 S. Ct. at 734. And at the end of the opinion, the Supreme Court added: "Giving *Miller* retroactive effect . . . *does not require States to relitigate sentences*, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Id.* at 736 (citing Wyo. Stat. Ann. § 6–10–301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years)) (emphasis added). Thus, the Supreme Court has rejected the notion that a *Miller* violation necessarily requires resentencing.

## C. Certificate of Appealability

A judge may issue a Certificate of Appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

The rule for issuing a COA amounts to a "modest standard" and the Ninth Circuit has cautioned that "we must be careful to avoid conflating the standard for gaining permission to appeal with the standard for obtaining a writ of habeas corpus." *Silva v. Woodford*, 279 F.3d 825, 832 (9th Cir. 2002). Finally, "any doubts" about granting a petitioner's request for a COA "must be resolved in his favor" and a court should issue a

---

[5] Jara placed the words "new sentencing options be available" in single quotation marks. The words do not appear in *Miller*.

COA unless the claims are "utterly without merit." *Id.* at 833.

Here, jurists of reason could find this Court's conclusions debatable. Therefore, the Court will grant a COA.

Accordingly,

**IT IS ORDERED** that:

(1) Jara's objections to the R&R (Doc. 19) are **overruled**;

(2) Jara's request for judicial notice (Doc. 20) is **granted**;

(3) The R&R's recommended disposition (Doc. 15) is **accepted**;

(4) The Petition (Doc. 1) is **denied and dismissed with prejudice**;

(5) A Certificate of Appealability and leave to proceed in forma pauperis on appeal are **granted**; and

(6) The Clerk shall enter judgment accordingly and terminate this action.

Dated this 26th day of September, 2019.

Dominic W. Lanza
United States District Judge